IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:11-CV-82-D

| | | |
|---|---|---|
| DIANA L. BENEFIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Diana L. Benefiel ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 38, 40). Both parties submitted a memorandum in support of their respective motions (D.E. 39, 41). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 42). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

I.     BACKGROUND

    A.     Case History

Plaintiff filed an application for DIB on 4 February 2008 alleging a disability onset date of 23 November 2004. Transcript of Proceedings ("Tr.") 23. Her application was denied initially and again upon reconsideration, and a request for hearing was timely filed. Tr. 23. On 13 November 2009, a video hearing was held before an Administrative Law Judge ("ALJ"). Tr.

37-76. The ALJ issued a decision denying plaintiff's claim on 2 February 2010. Tr. 23-31. Plaintiff timely requested review by the Appeals Council. Tr. 17-19. The Appeals Council denied the request for review on 28 March 2011. Tr. 1-6. At that time, the decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff commenced this proceeding on 21 April 2011, seeking judicial review pursuant to 42 U.S.C. § 405(g). (*See* Compl. (D.E. 1)).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act goes on to describe the attributes an impairment must have to be disabling:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The burden of proving disability falls upon the claimant. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993).

2
Case 7:11-cv-00082-D   Document 43   Filed 05/31/12   Page 2 of 18

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 49 years old on the alleged onset date of disability; 53 years old on the last date insured, 31 December 2008; and 54 years old on the date of the administrative hearing. *See* Tr. 25 ¶ 1; 30 ¶ 6; 42. She has a high school education and an associate's degree in applied science. Tr. 42, 47. She began, but did not complete, the requirements for a degree in elementary education. Tr. 47-48.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of 23 November 2004 through her last insured date of 31 December 2008. Tr. 25 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations, 20 C.F.R. § 404.1520(c): degenerative disc disease of the lumbar spine; arthritis of the right knee; depression; post traumatic stress disorder ("PTSD"); bipolar disorder; and generalized anxiety disorder. Tr. 25 ¶ 3. At step three, however, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 25 ¶ 4.

The ALJ determined that through the date last insured, plaintiff had the RFC to perform light work, except that she could climb only occasionally; required a sit/stand option; and could perform simple and complex tasks at a nonproduction pace in a low-stress setting. Tr. 27 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff was capable of performing past relevant work as a teacher. Tr. 29 ¶ 6. In making this finding, the ALJ relied on the testimony of a vocational expert ("VE") at the hearing. Tr. 29-30 ¶ 6; 68-69, 70-71.

At step five, the ALJ made the alternative finding that there also existed other work in significant numbers in the national economy that plaintiff was capable of doing, including

storage rental clerk, library aide, and clerk (operating office equipment). Tr. 30 ¶ 6. The ALJ again relied on testimony of the VE in making this determination. Tr. 30 ¶ 6; 68-70. The ALJ concluded that plaintiff was not under a disability at any time from the alleged onset of disability through her last date insured. Tr. 31 ¶ 7.

## II.    DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g.*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based

5

on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ erred in his: (1) evaluation of the medical source opinions; (2) assessment of her credibility; and (3) reliance on the VE's testimony. Each contention will be examined in turn below.

### C. Evaluation of Medical Source Opinions

#### 1. Standards of Evaluation

The principles governing the evaluation of medical source opinions are well established. Opinions of physicians who have treated a claimant are generally accorded more weight than the opinions of physicians lacking a treatment relationship. 20 C.F.R. §404.1527(d)(2).[1] The reason is that the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of . . . [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* Indeed, the Regulations provide that opinions of treating physicians on the nature and severity of impairments can be accorded controlling weight. *See* 20 C.F.R. § 404.1527(d)(2).

---

[1] Citation is to the version of the regulation in effect at the time the ALJ issued his decision, 2 February 2010.

To be entitled to such weight, however, the opinions must be well supported by medically acceptable clinical and laboratory diagnostic techniques and not be inconsistent with the other substantial evidence in the record. *Id.*; *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (2 July 1996). If the medical opinions of a treating source are not given controlling weight, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the frequency of examination, the supportability of the opinions, their consistency with the record, and any specialization of the provider. 20 C.F.R. § 404.1527(d)(2)-(6). Significantly, an ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see* 20 C.F.R. § 404.1527(f)(2)(ii).

Similarly, the opinions of physicians who examined a claimant are generally entitled to more weight than those of physicians who did not perform an examination. *See* 20 C.F.R. § 404.1527(d)(1), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (2 July 1996). The weight ultimately attributed to medical opinions of nonexamining sources depends on the same factors, to the extent applicable, used to evaluate the medical opinions of treating sources. 20 C.F.R. § 404.1527(f). In addition, if applicable, the status of the nonexamining source as a state agency medical consultant or medical expert used by the Commissioner is to be considered. 20 C.F.R. § 404.1527(f). Unless the treating source's medical opinions are given controlling weight, the ALJ must explain in his decision the weight given to the opinions of nonexamining sources as he must do for treating source opinions. 20 C.F.R. § 404.1527(f)(2)(ii). Notably, however,

opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See id.* § 404.1527(e); Soc. Sec. R. 96-5p, 1996 WL 374183, at *2, *5 (2 July 1996).

### 2. Evaluation of Dr. Chowdhury's Opinions

Psychiatrist Shabbir A. Chowdhury, M.D. treated plaintiff from 30 October 2005 through at least 3 November 2009 for varying disorders, including bipolar disorder, depression, PTSD, and general anxiety disorder. Tr. 885. In a medical source statement dated 18 July 2008, Dr. Chowdhury found, as the ALJ stated, that plaintiff "had mild to moderate limitations with understanding, memory, concentration, and persistence[;] marked limitation in social interaction and adaptation[;] and was likely to decompensate under stress." Tr. 28 ¶ 5. In a separate letter dated 3 November 2009, Dr. Chowdhury stated that plaintiff continued to have the same symptoms and limitations described in the medical source statement. Tr. 885. He found specifically that plaintiff suffers from "marked limitations in areas of sustained concentration and persistence, social interactions and adaptation," referring to findings in his treatment notes as support. Tr. 885. Dr. Chowdhury concluded that plaintiff "is unable to perform full-time work due to her impairments." Tr. 885. The ALJ gave Dr. Chowdhury's assessments "little weight." Tr. 28 ¶ 5.

Plaintiff contends that the ALJ erred by not giving Dr. Chowdhury's opinions more weight generally and in particular at step three. The court disagrees.

The ALJ explained that he gave Dr. Chowdhury's opinions little weight, in part, because they are not supported by his treatment records. Tr. 28 ¶ 5. He noted specifically that the records "show the [plaintiff's] psychiatric symptoms are largely stable with medication." Tr. 28

¶ 5. In a nearby paragraph in the same section of the decision (which set out and explained the RFC determination), the ALJ elaborates on his assessment of Dr. Chowdhury's records:

> Records generally show normal thought processes, and attention and concentration, and good insight and judgment. Notes also show that the [plaintiff] was doing well and described as stable on her medication for much of 2006 through 2009 (Exhibits 15F, 26F).

Tr. 28 ¶ 5. The court has reviewed the records cited (Tr. 678-93 (Ex. 15F), 852-68 (Ex. 26F))[2] and finds that substantial evidence supports the ALJ's characterization of them.

Although plaintiff contends that the ALJ found plaintiff stable without regard to whether or not her underlying condition was good, the foregoing passage from the decision belies this contention. Similarly, again as the ALJ's language indicates, the treatment notes do not simply use conclusory phrases such as "doing well," as plaintiff suggests, but include findings in a range of specific areas.

The ALJ explained that he also gave Dr. Chowdhury's opinions little weight because they are "inconsistent with the [plaintiff's] wide range of activities of daily living, and social activities," citing statements in function reports plaintiff and her husband provided as part of the administrative process on 13 June 2008 (Tr. 204-11 (plaintiff's husband), 212-19 (plaintiff)). In paragraphs in the same section of the decision, the ALJ describes these activities as follows:

> She shops for groceries with assistance, and drives 2-3 times per week to church or the grocery store. [She] goes to church twice per week, but gets up during the service.
>     . . . .
> She is able to do light household chores, plan meals, feed the dogs and take them to the vet and groomer, do laundry, shop for groceries, and load the dishwasher.

---

[2] The treatment notes at Tr. 678-93 cover the period 31 October 2007 through 17 September 2009, and those at Tr. 852-68 the period 3 October 2005 through 11 June 2008. The treatment notes for 31 October 2007 through 11 June 2008 appear at both Tr. 863-68 and Tr. 672-77. Similarly, the treatment notes in Exhibit 2F at Tr. 302-17 are duplicates of those at Tr. 678-93.

Tr. 27 & 29 ¶ 5. The court has reviewed the statements cited and finds that substantial evidence supports the ALJ's portrayal of them.

Additional support for the ALJ's attribution of little weight to Dr. Chowdhury's opinions is found in the 11 September 2008 opinions of nonexamining state agency physician Richard Cyr-McMillon, M.D. *See* Tr. 731-44 (psychiatric review technique), 745-48 (mental RFC assess.). As the ALJ noted, Dr. Cyr-McMillon found that plaintiff "could understand and remember simple and complex instructions, . . . required a low stress setting [and had] mild to moderate mental limitations." Tr. 29 ¶ 5. The ALJ gave Dr. Cyr-McMillon's opinions "[s]ignificant weight" because he found they reflect plaintiff's actual level of functioning based on treatment records and her activities of daily living. Tr. 29 ¶ 5.

Plaintiff argues that the ALJ did not consider the other factors specified in 20 C.F.R. § 404.1527(d) in weighing Dr. Chowdhury's opinions. In fact, though, it is apparent from his decision that he did. For example, he mentions expressly the length and nature of Dr. Chowdhury's treating relationship with plaintiff and Dr. Chowdhury's status as a psychiatrist. Tr. 28 ¶ 5; *see* 20 C.F.R. § 404.1527(d)(2), (5). While the ALJ did not discuss the specific findings in treatment notes Dr. Chowdhury cites as support in his opinion letter, the ALJ considered the treatment notes as a whole and found them inadequate to support Dr. Chowdhury's opinions. Tr. 28 ¶ 5; *see* 20 C.F.R. § 404.1527(d)(3).

Plaintiff also contends that the ALJ improperly rejected Dr. Chowdhury's opinions solely on the basis of plaintiff's activities as reflected in the function report statements of plaintiff and her husband when he found at step three of the sequential analysis that plaintiff did not meet or medically equal listing 12.04 for affective disorders. That listing requires, among other things, two of the following: marked restriction of activities of daily living; marked difficulties in

maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Listing 12.04B. Plaintiff argues that she satisfied this criterion on the basis of Dr. Chowdhury's findings in his medical source statement and opinion letter that she had marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, or pace. *See* Tr. 703-04, 885. The ALJ found plaintiff's limitations in these areas mild and moderate, respectively.

It is true, as plaintiff points out, that the ALJ cited only the statements of plaintiff and her husband in making this finding. But it is not true that the ALJ declined to follow Dr. Chowdhury's assessment solely on that basis. As discussed, the ALJ gave Dr. Chowdhury's opinions little weight on the additional ground that they were not supported by Dr. Chowdhury's own treatment records, which the ALJ found showed that she was doing well on medication. *See* Tr. 28. It is of no consequence that the ALJ did not present this analysis of Dr. Chowdhury's opinions at step three, as well as later in his decision, because the decision must be read as a whole. *E.g., Finley v. Astrue*, No. 5:08-CV-209-D(1), 2009 WL 2489264, at *5 (E.D.N.C. 13 Aug. 2009). The ALJ's finding that plaintiff did not meet or medically equal listing 12.04 is therefore supported by substantial evidence.

Further, Dr. Chowdhury's opinion that plaintiff was unable to perform fulltime work due to her impairments suffers from the deficiency that it is on an issue reserved to the Commissioner. It is therefore not entitled to any special weight due to its source. *See* 20 C.F.R. § 404.1527(e); Soc. Sec. R. 96-5p, 1996 WL 374183, at *2, *5.

Notably, as the ALJ's attribution of little weight to Dr. Chowdhury's opinions indicates, he did not reject them entirely. His RFC determination reflects plaintiff's psychiatric limitations by restricting her to work at a nonproduction pace in a low-stress setting. Tr. 27 & 29 ¶ 5.

The court concludes that the ALJ's evaluation of the opinions of Dr. Chowdhury is supported by substantial evidence and conforms to the applicable legal standards. Plaintiff's challenge to this portion of the ALJ's decision accordingly fails.

### 3. Evaluation of Dr. Locklear's Opinions

State agency physician Ferris Y. Locklear, M.D. conducted a physical examination of plaintiff on 25 March 2008. *See* Tr. 28 ¶ 5; 623-27. In his report, Dr. Locklear found that plaintiff "has difficulty walking, bending, stooping, and squatting, rising, lifting, standing, for any extended period of time." Tr. 626. The ALJ stated that he gave "significant weight" to this finding by Dr. Locklear. Tr. 28 ¶ 5. Plaintiff argues, however, that Dr. Locklear's finding creates ambiguity over whether plaintiff could perform work at the light exertional level—which the ALJ found plaintiff could perform—because light work "requires a good deal of walking or standing." Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5 ¶ 2 (1983).

Plaintiff's contention is baseless. In accordance with his attribution of significant weight to Dr. Locklear's finding, the ALJ included a sit/stand option in his RFC determination. Tr. 27 ¶ 5. There accordingly is no inconsistency between Dr. Locklear's finding and the ALJ's determination that plaintiff could perform work at the light exertional level. The ALJ's evaluation of Dr. Locklear's opinions is therefore supported by substantial evidence and conforms to the applicable legal standards. The court accordingly also rejects this challenge to the ALJ's decision.

12
Case 7:11-cv-00082-D   Document 43   Filed 05/31/12   Page 12 of 18

### D. Evaluation of Plaintiff's Credibility

Plaintiff contends that the ALJ did not properly evaluate the credibility of plaintiff's allegations of limitations arising from her psychiatric and physical condition, which she contends is disabling. For example, as the ALJ summarized, plaintiff testified at the hearing that she could not work because of back pain and mood swings despite medication and other treatment; suffers from chronic knee pain and panic attacks; and is limited in her daily activities because of these conditions. Tr. 27 ¶ 5. The court does not agree that the ALJ erred.

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id.* at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id.* at 595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "grounded in the evidence." *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4 (2 July 1996)); *see also* 20 C.F.R. §§ 404.1529 (setting out factors in evaluation of claimant's pain and other symptoms).

In assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 28 ¶ 5. At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not fully credible. Tr. 28 ¶ 5. He stated that "the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." Tr. 28-29 ¶ 5.

The ALJ provided specific reasons for his credibility determination that are supported by substantial evidence of record. Tr. 29 ¶ 5. He cites to the psychiatric treatment notes previously discussed indicating that plaintiff's mental problems are stable and controlled with medication; her husband's statements in his function report that she can pay attention for unlimited periods of time, follow instructions, and talk on the telephone, visit, and email friends, and is socially outgoing; medical records indicating that she obtained significant relief from her lower back pain with injections, physical therapy, and medication; her husband's and her own statements in their respective function reports to the effect that she can perform a wide range of activities of daily living; and a psychiatric treatment note indicating that she was travelling to Canada in June 2006. Tr. 29 ¶ 5.

Plaintiff contends that the reasons advanced by the ALJ are legally insufficient. For example, she argues that the ALJ should have fully accepted Dr. Chowdhury's opinions regarding plaintiff's psychiatric condition. As discussed, however, the ALJ's attribution of little weight to these opinions was lawful.

Plaintiff also contends that the ALJ improperly rejected plaintiff's physical complaints simply on the basis of the type of treatment received and her daily activities. That is plainly untrue. While the ALJ did consider these factors, he also expressly evaluated the efficacy of the various treatments plaintiff received as reflected in the longitudinal medical evidence of record, including specifically those provided her by Viren Desai, M.D. of the Fayetteville Pain Center from 2004 through at least February 2009. Tr. 27-28 ¶ 5; 29 ¶ 5. The ALJ, of course, also considered the report of Dr. Locklear.

In addition, plaintiff argues that the ALJ overstates her capacity to perform activities of daily living, citing specifically housekeeping, cooking, and grocery shopping. But, belying the

14
Case 7:11-cv-00082-D   Document 43   Filed 05/31/12   Page 14 of 18

purported overstatement, the ALJ described plaintiff's capabilities in these areas as doing "light household chores," "plan[ning] meals," and shopping for groceries "with assistance." Tr. 27 & 29 ¶ 5.

Finally, plaintiff faults the ALJ for not indicating whether he considered plaintiff's history of steady employment since the age of 18 in assessing her credibility. As plaintiff acknowledges, there is no requirement that an ALJ do so in the Fourth Circuit. In any event, the ALJ's disagreement with plaintiff was not with her willingness to work, but rather her assessment of her ability to work.

Notwithstanding this difference, the ALJ's RFC determination does obviously reflect both psychiatric and physical limitations about which plaintiff complained. Indeed, the ALJ expressly rejected the physical RFC assessments of two state agency nonexamining physicians (Tr. 635-42, 723-30) who found plaintiff capable of performing work at the medium exertional level. Tr. 29 ¶ 5.

The court concludes that the ALJ's determination of plaintiff's credibility is supported by substantial evidence and conforms to the applicable legal standards. Plaintiff's challenge to it therefore fails.

### E. Evaluation of the VE's Testimony

Plaintiff argues that the ALJ erred in relying on the testimony of the VE, in part, because the hypothetical he posed to the VE did not include all of plaintiff's limitations. This contention has no merit.

To be helpful, the VE's opinion must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a claimant's RFC for which

the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). The VE must accept as true the RFC as determined by the ALJ. *Hines v. Barnhart*, 453 F.3d 559, 566 n.5 (4th Cir. 2006).

In this case, the hypothetical presented to the VE by the ALJ did adequately reflect the plaintiff's RFC as determined by the ALJ. *See* Tr. 68-69. Although plaintiff complains that the hypothetical should have included the limitations found by Dr. Chowdhury, the ALJ lawfully gave Dr. Chowdhury's opinions little weight, as previously discussed.

Plaintiff also contends that by simply restricting plaintiff to work at a nonproduction pace in a low-stress setting he did not adequately account for all the limitations subsumed in Dr. Cyr-McMillon's finding that plaintiff had moderate difficulties in concentration, persistence, and pace. In fact, though, the language used by the ALJ in the hypothetical was a paraphrase of the specific finding on plaintiff's limitations in this area as found by Dr. Cyr-McMillon. *Compare* Tr. 69 *with* Tr. 747 § III.A.B.D.; *see also* Tr. 29 ¶ 5.

Lastly, plaintiff points out that the finding that she can return to work as a teacher conflicts with the *Dictionary of Occupational Titles* ("*DOT*") because the *DOT* does not provide for a sit/stand option, which the ALJ found plaintiff required. When a VE's testimony conflicts with the *DOT*, an ALJ is required to elicit "a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." Soc. Sec. R. 00-4p, 2000 WL 1898704, at *2 (4 Dec. 2000). Plaintiff argues that the ALJ erred by failing to elicit such an explanation.

The ALJ did elicit from the VE the statement that all his testimony was consistent with the *DOT*, but there was no elaboration on that point, including specifically any with respect to plaintiff's ability to return to work as a teacher. Tr. 71. The absence of such an explanation is

particularly notable because plaintiff testified that, apparently according to her instructor, she was unable to complete her teaching training because she "wasn't able to stand, sit, or walk long enough to teach children." Tr. 48.

In any event, the court need not determine whether the VE's testimony was adequate in this regard because, as indicated, the ALJ proceeded to conduct, in the alternative, the analysis at step five. The VE stated expressly that two of the occupations he found plaintiff able to perform—storage facility rental clerk and library aide—accommodated the changing of position. Tr. 69-70. This explanation satisfies the explanation requirement of Social Security Ruling 00-4p. Therefore, even if the VE's testimony did not adequately address the sit/stand option at step four, it did at step five.

The court concludes that the ALJ's reliance on the VE's testimony was supported by substantial evidence and conformed to the applicable legal standards. The court therefore rejects this final challenge to the ALJ's decision.

## III. CONCLUSION

For the foregoing reasons, the final decision of the Commissioner is supported by substantial evidence and conforms to the applicable legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds

of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 31st day of May 2012.

/s/ James E. Gates
James E. Gates
United States Magistrate Judge